Dalia Arismendez HERNANDEZ,
Appellant,

v.

The STATE of Texas, Appellee.

No. 08–93–00304–CR.

Court of Appeals of Texas,
El Paso.

Oct. 6, 1994.

Ronnie G. Harrison, Houston, for appellant.

John B. Holmes, Dist. Atty. of Harris County, Houston, for appellee.

Before KOEHLER, LARSEN and McCOLLUM, JJ.

## OPINION

McCOLLUM, Justice.

This is an appeal from a conviction for the offense of injury to a child. *See* TEX.PENAL CODE ANN. § 22.04(a)(1) (Vernon 1994). Appellant waived a jury trial and entered a plea of guilty before the trial court. Upon a finding of guilt, the trial court assessed punishment at imprisonment for a term of forty years. We affirm.

### *Factual Summary*

The record reflects that Appellant lived next door to JoAnne and Michael Dedman. In mid-June of 1992, the Dedmans left their eleven-month-old son, Hunter, in Appellant's care while they were out of town. During the early evening hours of June 17, Appellant carried Hunter, who was limp and purple, to a neighbor's home. Over Appellant's protests, the neighbors called emergency medical services. Carol Wheeler, director of North Channel EMS and a paramedic, was among the EMS personnel that responded to the call. Someone at the scene told Wheeler that the child's airway was blocked by a paper towel, and when she looked, she saw what appeared to be a paper towel covering the back of his throat. She tried to remove it with her fingers, but was unable to reach it due to its depth in the throat. Using curved forceps, she removed a fist-sized wad of paper towel from Hunter's throat. He was transported to Hermann Hospital in Houston by Life Flight. He had suffered severe brain damage as a result of the blockage of his airway and died three days later. Hunter's attending physician, Dr. Charles Thomas Black, and Ms. Wheeler were of the opinion that it was not possible for a child to voluntarily swallow such a large wad of paper towel. Dr. Black concluded that the paper towel was forced down the child's throat based upon a tear to the upper part of his tonsil.

Prior to trial, Appellant told several different stories with regard to what had happened. In one version, she said that she didn't know how the paper towel became lodged in Hunter's throat and implied that her three-year-old daughter might have done it. In another version, she said that Hunter had put a pen in his mouth. In a third statement, she said that she put the paper towels in Hunter's mouth because he was crying. Appellant submitted a written statement as part of the presentence investigation in which she said that as she wiped milk from Hunter's face with wet paper towels, she heard voices which exerted power over her

and she didn't know right from wrong. She claimed that when she "came to her senses", she saw the paper towel in Hunter's mouth and her efforts to remove it only forced it farther down his throat. Appellant testified to similar facts at the punishment hearing, again blaming her actions upon "voices" which had told her to put the paper towels in Hunter's mouth.

In a single indictment, Appellant was charged with injury to a child under Section 22.04(a)(1) and murder under both Section 19.02(b)(1) and Section 19.02(b)(2) of the Penal Code. *See* TEX.PENAL CODE ANN. §§ 19.02(b)(1), 19.02(b)(2), and 22.04(a)(1) (Vernon 1994). Appellant's case was initially set for a jury trial on April 1, 1993. However, Appellant elected to waive her right to a jury trial, and while the jury panel waited in another courtroom, entered a plea of guilty before the trial court to injury to a child. Upon the State's motion, the trial court dismissed the murder paragraphs of the indictment. The trial court found that the evidence substantiated a finding of guilt, but withheld finding Appellant guilty, and recessed the case until June 10, 1993 so that a presentence investigation could be conducted. On July 13, 1993, the court found Appellant guilty, and sentenced her to forty years' confinement with a deadly weapon finding.

### Discussion

Appellant attacks her conviction by four related points of error. In Points of Error Nos. One and Two, Appellant contends that the trial court erred in failing to *sua sponte* withdraw her plea of guilty and in denying Appellant's motion to withdraw her plea of guilty on the ground that it was entered involuntarily. Resolution of Appellant's contentions requires a detailed review of the proceedings below.

After Appellant entered a plea of guilty on April 1, her case was recessed so that a presentence investigation (PSI) could be conducted. The PSI was completed, and a report dated May 18, 1993 was received by the trial court around June 1. Both the State and defense counsel received their copies at about the same time. Based upon certain evidence in the PSI, namely letters from Dr.

Fred Fason, a psychiatrist, and Alex B. Caldwell, a psychologist, and Appellant's statement that she committed the offense because of voices in her head, the trial court held a conference with the prosecutor and defense counsel on June 8, 1993. At that conference, defense counsel informed the trial court that prior to the entry of Appellant's guilty plea, he was aware of her claims with regard to hearing voices and that he had determined, after conducting an investigation with the assistance of Dr. Fred Fason, that an insanity defense was not viable. Later that same day, defense counsel informed the trial court that he had received a letter from Dr. Karen Brown in which she stated that she had evaluated Appellant on June 8 and was of the professional opinion that Appellant's psychotic symptoms and delusional beliefs motivated her behavior when she killed Hunter. Dr. Brown did not, however, go so far as to state in the letter that Appellant was insane at the time of the commission of the offense. At the trial court's instruction, defense counsel consulted with Dr. Brown regarding her findings.

On June 10, 1993, Appellant filed a motion to withdraw her plea of guilty on the ground that defense counsel had consulted Dr. Brown, and she was of the opinion that Appellant was insane at the time of the commission of the offense. The trial court conducted a hearing on both motions that same day. In support of her motion, Appellant called Dr. Brown, who testified that she had examined Appellant for one hour on June 8 and based upon that examination, she was of the opinion that Appellant was insane at the time of the commission of the offense. She told the trial court that Appellant had reported to her that she did not share information with the other psychiatrist who had examined her because her "voices" told her not to trust him. Appellant testified at the punishment hearing that she confided in Dr. Brown, but did not do so with her attorney and Dr. Fason because her voices told her not to trust them.

Sometime prior to February 22, 1993, Appellant hired Dr. Fred Fason, a psychiatrist for the purposes of determining the viability of an insanity defense. He testified at the

June 10 hearing that he had examined Appellant on February 22, March 8, and April 6 of 1993, and was aware of Appellant's claims with regard to hearing voices. In addition to interviewing Appellant, he also had her complete a Minnesota Multiphasic Personality Inventory (MMPI). Both Dr. Fason and Dr. Caldwell evaluated the MMPI. Prior to the entry of Appellant's plea of guilty, Dr. Fason reported to Appellant's trial counsel that although Appellant was mentally ill and might be psychotic, he was unable to obtain sufficient information from her to support an insanity defense. He suggested that Appellant undergo hypnosis in order that he might gain sufficient information to support an insanity defense. At the urging of Appellant's trial counsel, Dr. Fason met with Appellant on April 6, which was after the entry of her plea of guilty, in an effort to convince her to undergo hypnosis, but she refused.

Appellant did not testify at the hearing with regard to the voluntariness of her guilty plea. However, Appellant's attorney testified that at the time Appellant's plea was entered, he did not believe the insanity defense was a viable defense based upon Dr. Fason's report. He told the trial court that due to Dr. Brown's testimony, he now believed that it was a viable defense and he "would never have entertained a plea of guilty" for Appellant had he known that. At the conclusion of the hearing, the trial court *sua sponte* ordered two independent psychiatrists, Drs. Marvin A. Stone and Ramon A. Laval, to perform psychiatric evaluations of Appellant to determine both her competency to stand trial[1] and her sanity. The trial court continued the hearing on the motion to withdraw until June 17, 1993. Both Dr. Stone and Dr. Laval concluded after examining Appellant that she was competent to stand trial and sane at the time of the commission of the offense. The trial court denied the motion to withdraw the plea of guilty on June 17, 1993. The trial court subsequently found Appellant guilty and sentenced her.

■■■■ The validity of a guilty plea depends upon whether it was entered voluntarily and made intelligently and, if upon advice of an attorney, that counsel was reasonably competent and rendered effective assistance. *Ex parte Evans*, 690 S.W.2d 274, 276 (Tex. Crim.App.1985); TEX.CODE CRIM.PROC.ANN. art. 26.13(b) (Vernon 1989).[2] In determining the voluntariness of a plea, the entire record must be considered. *Williams v. State*, 522 S.W.2d 483, 485 (Tex.Crim.App.1975). The transcript contains the plea papers,[3] the judgment, and the court's docket sheet. These documents reflect that Appellant was fully and properly admonished as required by Article 26.13 and that she entered her plea voluntarily and knowingly. Most significantly, the judgment states that: "The Defendant, waived his [sic] right of trial by jury, and pleaded as indicated above; thereupon the Defendant was admonished by the Court as required by Article 26.13, Code of Criminal Procedure. And it appearing to the Court that the Defendant is mentally compe-

1. There is no evidence that Appellant was ever incompetent. In fact, the trial court stated during the June 10 proceedings that "[n]ever at anytime has anyone had any question about the defendant's competency, not at any point in these proceedings and not today...."

2. No plea of guilty or plea of *nolo contendere* shall be accepted by the court unless it appears that the defendant is mentally competent and the plea is free and voluntary. Tex.Code Crim.Proc. Ann. art. 26.13(b) (Vernon 1989).

3. The transcript contains the "plea papers" executed by Appellant, defense counsel, the prosecutor, and the trial court. The plea papers consist of a written document entitled "Admonishments, Statements, and Waivers", which contained the admonishments required by Article 26.13(b), and a document entitled "Waiver of Constitutional Rights, Agreement to Stipulate, and Judicial Con-

fession". By her signature to both documents, Appellant stated that she had discussed her case with her attorney, she was satisfied with his representation of her, she fully understood the consequences of her guilty plea, and she intended to enter a plea of guilty. Appellant's counsel executed both documents as well. Defense counsel specifically indicated in writing that he had discussed the consequences of the "Waiver of Constitutional Rights, Agreement to Stipulate, and Judicial Confession" with Appellant, and he believed that she executed it voluntarily and knowingly. The trial court stated in writing in the same document that after he admonished Appellant of the consequences of her plea, he ascertained that she entered her plea knowingly and voluntarily after discussing the case with her attorney.

tent to stand trial, the plea is freely and voluntarily made, and the Defendant is aware of the consequences of his [sic] plea, the plea is hereby received by the Court and entered of record."

■ The State argues that Appellant has waived error because she has not brought forward the statement of facts from the guilty plea hearing. *See* TEX.R.APP.P. 50(d), 53(k). No statement of facts is available since Appellant waived the right to have a court reporter record that proceeding. We do not agree with the State that Appellant's failure to bring forward on appeal the statement of facts from the guilty plea constitutes a waiver of her complaint that her plea was involuntary. However, there is a presumption of regularity of the judgment and the proceedings, and the burden is on Appellant to overcome this presumption. *Ex parte Wilson,* 716 S.W.2d 953, 956 (Tex.Crim.App. 1986). Recitals contained in a judgment create a presumption of regularity and truthfulness, absent an affirmative showing to the contrary. *Breazeale v. State,* 683 S.W.2d 446, 450 (Tex.Crim.App.1984) (op. on reh'g). When the record shows that the trial court properly admonished the defendant, as it does here, it presents a *prima facie* showing that the guilty plea was knowing and voluntary, and the burden then shifts to the defendant to establish that she did not understand the consequences of her plea. *Tovar–Torres v. State,* 860 S.W.2d 176, 178 (Tex.App.— Dallas 1993, no pet.); *Smith v. State,* 857 S.W.2d 71, 73 (Tex.App.—Dallas 1993, pet. ref'd).

Appellant does not contend that her plea was involuntary due to the faulty advice of counsel, nor does she assert that she was rendered ineffective assistance by counsel. Rather, she claims that her plea was involuntary due to her *own* failure to assist her attorney and psychiatrist by providing information relevant to an insanity defense prior to the entry of her plea. Although her argument is not entirely clear, Appellant apparently contends that had she cooperated with Dr. Fason and provided him with sufficient information to support an insanity defense, her attorney would not have advised her to plead guilty. Along that same line, she di-

rects our attention to trial counsel's testimony that he would not have advised her to plead guilty if he had known of Dr. Brown's opinion.

■ To the extent that Appellant's argument assumes that Dr. Fason, had she cooperated with him, would have necessarily concluded that she was insane, it is unsupported by the record and speculative. Thus, her assertion that her attorney's advice would have been different had she not withheld evidence from Dr. Fason is likewise without support. We have reviewed the record in its entirety and do not find that Appellant has met her burden of demonstrating that she did not understand the consequences of her plea at the time it was entered. Appellant never testified, and the record does not otherwise reflect, that she was unaware that her plea of guilty waived an insanity defense or any other defenses. It is quite clear that trial counsel was aware that Dr. Fason was unable to fully evaluate Appellant's sanity due to Appellant's failure to provide sufficient information. Presumably, counsel's advice took that into account. The judgment and other documents contained in the appellate record recite that Appellant, after consultation with her attorney, was aware of the consequences of entering a plea of guilty. Implicit in those recitals is an understanding that Appellant was waiving any defenses she might have, including those that could not be completely evaluated because of her lack of cooperation.

■ In the context of claims that defense counsel was ineffective for failure to call alibi witnesses, the defendant's failure to provide his attorney with information relevant to the identity or location of the witnesses has defeated the defendant's claim of ineffective assistance. *See Cannon v. State,* 668 S.W.2d 401, 402–03 (Tex.Crim.App.1984); *Stewart v. State,* 748 S.W.2d 543, 544 (Tex. App.—Dallas 1988, no pet.). Even though Appellant does not claim counsel was ineffective, her contention necessarily involves the advice she was given with regard to the entry of her guilty plea. As such, we will apply a similar rule to Appellant's claim that her plea was involuntary. We are unwilling to allow Appellant to invalidate her guilty

plea by failing to communicate information to her attorney and psychiatrist which could have affected their evaluation of a potential defense, their professional judgment, and ultimately, counsel's advice to her. Because there is no evidence that Appellant did not understand the consequences of her plea of guilty at the time it was made, the trial court did not err in refusing to, either *sua sponte* or upon request, withdraw Appellant's plea of guilty. Points of Error Nos. One and Two are overruled.

In Points of Error Nos. Three and Four, Appellant asserts that the trial court erred in failing to *sua sponte* withdraw her plea of guilty and in denying her motion to withdraw her plea of guilty on the ground that evidence was presented which fairly raised the issue of her innocence prior to the adjudication of guilt. She argues that the trial court should have withdrawn her plea of guilty so that she could have her day in court before a jury. Again, the State argues that the absence of the statement of facts from the guilty plea hearing prevents review of these points of error. However, the evidence to which Appellant points as raising the question of her innocence was presented to the trial court during hearings conducted after the guilty plea, and the statement of facts from those hearings are found in the appellate record. Consequently, Appellant's points of error are reviewable.

■ It is well established that where the defendant decides to withdraw her guilty plea after the trial judge takes the case under advisement or pronounces judgment, the withdrawal of such plea is within the sound discretion of the trial court. *Jackson v. State*, 590 S.W.2d 514, 515 (Tex.Crim.App. 1979). By passing the case for preparation of the presentence investigation report, the trial court took Appellant's case under advisement. *See Jackson*, 590 S.W.2d at 515; *Thompson v. State*, 852 S.W.2d 268, 270 (Tex. App.—Dallas 1993, no pet.). In determining whether the trial court should withdraw a guilty plea, there is a distinction between guilty pleas entered before a jury and those entered before the trial court sitting without

a jury. *Moon v. State*, 572 S.W.2d 681, 682 (Tex.Crim.App.1978). There is no valid reason for the court to withdraw the guilty plea and enter a plea of not guilty for the defendant when the defendant has entered a plea of guilty before the court after waiving a jury. *Moon*, 572 S.W.2d at 682. It is the duty of the trial court to consider the evidence submitted and as the trier of the facts the court may find the defendant guilty or not guilty. *Id.* It would serve no purpose to withdraw the plea of guilty and enter a not guilty plea. *Id.*

■ With regard to Appellant's assertion that she is entitled to have her day in court before a jury, she fails to recognize that even if the trial court had permitted her to withdraw her plea of guilty, she would not be entitled to a jury trial, having voluntarily waived that right prior to the entry of her plea.[4] *See Ford v. State*, 848 S.W.2d 776, 776–77 (Tex.App.—Houston [14th Dist.] 1993, no pet.). Appellant was not entitled to a separate hearing on the issue of sanity, and the trial court, as the trier of fact, could have found her guilty or not guilty by reason of insanity.[5] *Bonner v. State*, 520 S.W.2d 901, 906 n. 2 (Tex.Crim.App.1975). Having considered the evidence with regard to Appellant's sanity, that is, the testimony of Drs. Brown and Fason, and the reports of Drs. Stone and Laval, the trial court apparently chose to believe Dr. Stone's and Dr. Laval's conclusions that Appellant was sane at the time of the commission of the offense. We find no abuse of discretion in not withdrawing Appellant's plea of guilty. Points of Error Nos. Three and Four are overruled.

Having overruled Appellant's Points of Error Nos. One, Two, Three, and Four, the judgment of the trial court is affirmed.

---

4. Appellant does not contend on appeal that her jury waiver was involuntary.

5. *See* TEX CODE CRIM PROC ANN. art. 46.03 (Vernon Supp.1994).