RODRIGUEZ V STATE



NO. 07-00-0572-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



APRIL 24, 2002


______________________________



JONATHAN AARON RODRIGUEZ
,




 Appellant


v.



THE STATE OF TEXAS, 




 Appellee

_________________________________



FROM THE 351ST DISTRICT COURT OF HARRIS COUNTY;



NO. 847,477; HON. MARK KENT ELLIS, PRESIDING


_______________________________



Before BOYD, C.J., QUINN, and REAVIS, J.J.

 Jonathan Aaron Rodriguez (appellant) appeals his conviction for burglary of a
habitation. Through five issues, he asserts that his guilty plea was involuntary and that his
counsel was ineffective. We affirm.

Background


 On June 14, 2000, eleven-year-old J. H. and her six-year-old younger sister, K. H.,
were at home when they heard someone ring the doorbell and then "hit the [front] door a
couple of times really hard . . . ." After looking through the peephole, J.H. saw a white male
later identified as appellant's juvenile co-defendant. J.H. "didn't want them to look through
the back door to see if anybody was there, so [she and her sister] went to [her] parents'
room." When she heard "the [back] door bust open" she called the police. The dispatcher
on the phone told her to look out the bedroom door to see if anybody was there or if it had
just been her imagination. When she looked, she saw another white male, later identified
as the appellant. She heard him say "[s]omebody's here." She then shut the door
because she was scared. 

 According to the PSI (presentence investigation) report, when the suspects realized
the house was occupied they ran out the back door. J.H. proceeded to give a description
of the two males to the police. Officer J. Robles was dispatched to the house. He noticed
two individuals (appellant and his brother) walking along the sidewalk outside the house. 
The two matched J.H.'s description of the intruders. Robles detained them, and, J.H.
subsequently identified appellant as one of the individuals who entered the house. 

 Appellant initially claimed he was not involved in the incident because he had been
at a friend's house. The officers walked over to the friend's house and asked to speak with
him. The juvenile co-defendant volunteered to return with the officer to the scene of the
crime. The juvenile suspect told Officer Seagler that he and the appellant had indeed
made entry into the house, that it had been appellant's idea, and that the appellant had
kicked in the door. The juvenile acknowledged that after he had knocked on the front door,
he and appellant went around to the back door and entered the house. 

 According to the PSI, the juvenile co-defendant stated that "[they] were gonna get
shit." They then looked around the house. Upon seeing J.H., the two exited the abode,
jumped the fence, and ran home. Furthermore, appellant eventually admitted that he had
entered the house and that the burglary was his idea. 

 Appellant entered an open plea of guilty to the second degree felony offense of
burglary of a habitation. He was then admonished by the court in accordance with the
Code of Criminal Procedure. At his hearing on the matter, sentencing was deferred
pending development of the PSI. Upon receiving the document, the trial court held a
punishment hearing and ultimately sentenced appellant to ten years imprisonment. 

Standard of Review


 The complaints asserted at bar were urged below via a motion for new trial. The
latter was denied by the trial court. Thus, the pertinent standard of review is one of abused
discretion. Salazar v. State, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001). And, unless the
decision rendered by the trial court fell outside the zone of reasonable disagreement, we
must let it stand. Burden v. State, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001) (stating that
discretion is abused when the decision falls outside the zone of reasonable disagreement).

Issues One, Two and Three - Plea Involuntary Due to Ineffective Counsel


 Through his first three issues, appellant contends that his guilty plea was involuntary
because his trial counsel was ineffective. Furthermore, counsel was allegedly ineffective
because he failed to interview two witnesses and inform appellant about the supposed
lesser included offense of criminal trespass. We overrule the contentions for the following
reasons.

 First, regarding the failure to interview two prospective witnesses, the witnesses
were the two young children who were alone when appellant entered the house. The
observations of one child appear in the presentence report and serve to place appellant
within the house after he forced his way inside. Yet, her statement does not reveal what
information she or her sister had which would have been beneficial to appellant had either
child been interviewed by counsel. Nor does appellant clarify the situation. He called
neither as witnesses at the hearing on his motion for new trial and now merely concludes
that their "testimony . . . would be crucial in a trial." Thus, we have before us a situation
wherein the appellant accuses counsel of being less than diligent in securing evidence
while failing to illustrate how it would benefit his defense. And, given this situation, we are
unable to hold that the trial court abused its discretion in rejecting appellant's contention.
See Wilkerson v. State, 726 S.W.2d 542, 550-51 (Tex. Crim. App. 1986), cert. denied, 493
U.S. 924, 107 L.Ed.2d 272, 110 S.Ct. 292 (1989)(holding that absent a showing that
potential defense witnesses were available and that their testimony would benefit the
defense, "counsel's failure to call witnesses is of no moment"). Simply put, it is not enough
to merely conclude that evidence exists which could have been discovered and would have
been beneficial. Rather, the burden lies with the complainant to illustrate what that
evidence is and illustrate how it would have materially aided him. 

 Second, regarding the possibility of obtaining a conviction for the lesser included
offense of criminal trespass, trial counsel testified that he discussed the topic of lesser
included offenses with appellant. This was done for the purpose of assessing available
options, given what was known about the case, "what may or may not be admissible by
and through the evidence that's in that offense report," and the admissions of guilt by both
the co-defendant and appellant. And, while counsel did not "specifically narrow it down to
if he wanted to go to trial to possibly get a lesser included offense," the two discussed the
situation in terms of whether "or not did he want the case tried or did he want to pursue the
other options." (1) Thereafter, appellant and trial counsel settled on a strategy focusing upon 
the punishment phase of the trial and securing probation. Thus, we have of record
evidence illustrating that appellant and his counsel discussed the topic of lesser included
offenses and, thereafter, chose to pursue a course of action they considered to be the
better option. And, given this evidence, we cannot fault the trial court for rejecting this
ground as a basis for new trial.

 Third, regarding the purported breach of an agreement to forego live testimony at
the punishment hearing, we note a dearth of evidence evincing such an agreement. 
Instead, appellant suggests that such an agreement was implied from the State's
"agreement to utilize a PSI report." Yet, he cites no authority in support of the proposition. 
Given his failure to cite authority, the issue was insufficiently briefed and, therefore, waived. 
See Maldonado v. State, 902 S.W.2d 708, 711 (Tex. App.-El Paso 1995, no writ) (holding
that the failure to provide legal citation in support of an issue results in the waiver of that
issue). So too did appellant neglect to cite us to any evidence illustrating that the State and
defense discussed the possibility of so limiting their respective presentations or actually
agreed to such a limitation. And, that he may have subjectively believed that only the PSI
was to be considered, his counsel not only knew that the State intended to call live
witnesses but also intended to present live testimony himself. (2) These indicia hardly
compelled the trial court to find that the litigants entered into an agreement of the nature
now urged by appellant. Consequently, the trial court was within its discretion to reject this
ground as a basis for new trial, as well. 

Issues Four and Five - Ineffective Counsel at Punishment


 Through his remaining two issues, appellant claims that his counsel rendered
ineffective assistance during the punishment stage of trial because he was inadequately
prepared and failed to protect appellant's Sixth Amendment rights regarding a pending
criminal matter in Corpus Christi. We again overrule the issues. 

 Regarding the matter of inadequate preparation, four instances are cited by
appellant. They involve 1) the failure to interview the two child witnesses mentioned above,
2) the presentation of Milton Hinkle (the children's father) as a defense witness, 3) the
failure to present live testimony at the punishment hearing on behalf of appellant, and 4)
the lack of adequate time to review the PSI. We consider each in the order mentioned.

 Failing to Interview the Hinkle Children

 As discussed above, appellant fails to provide us with evidence illustrating that the
two lone children (whom he frightened upon forcibly entering their home) had testimony
which could be used to his advantage on the issue of punishment. Without such evidence,
we cannot say that the trial court erred in rejecting this ground as basis for new trial. See
Wilkerson v. State, supra.

 Using Milton Hinkle as a Defense Witness

 Appellant argues counsel was ineffective because he called Milton Hinkle as a
defense witness even though the two had not spoken prior to the punishment hearing. 
Like many of his other contentions, this one too consisted of mere conclusions sans
citation to authority. Thus, it was waived.

 Furthermore, the individual who created the PSI stated therein that Hinkle
"expressed he would want the court to stipulate Boot Camp as a condition of probation." 
Given that Hinkle expressed a belief suggesting that he favored probation and boot camp,
counsel could have thought it effective trial strategy to call him as a witness and have him
reiterate the belief in open court. That it may have been better to first question Hinkle
outside the courtroom about his comment seems obvious. Yet, we do not live in a world
wherein one has ample time to do all that he may wish to. Indeed, in the heat of trial,
instantaneous decisions must be made not only by the trial court but by counsel as well. 
And, that these decisions may later lead to unexpected consequence does not render
counsel ineffective when, as here, arguable basis exists for making the decision. Thus,
we do not find that the trial court abused its discretion when refusing to grant a new trial
on the ground now urged by appellant.

 Preparation of Live Favorable Testimony

 Appellant next claims that counsel was ineffective because he was not prepared to
present live testimony from defense witnesses at the punishment hearing. However, the
record belies appellant's argument. It reflects that trial counsel told the court that "it was
[his] intention to have the family members come up [to the witness stand] as a group" and
asked whether the court would prefer them to speak individually. The court then instructed
counsel to "tell me who they are . . . I've read all their letters and I feel like I understand
their feelings in this situation." Counsel then proceeded to call three witnesses, Hinkle,
appellant, and Karen Thompson (appellant's mother). Thus, evidence appears of record
illustrating that counsel not only was prepared to call witnesses at the hearing but actually
did so, and the trial court was within its discretion to reject this ground for new trial as well. 
 

 Not having Sufficient Time to Review PSI Report

 Appellant also suggests that his attorney was inadequately prepared because he 
failed to move for a continuance upon discovering immediately before the hearing that
there pended against his client a similar prosecution in Corpus Christi. The information at
issue was discovered via the PSI. And, though appellant and his father knew of it, they
intentionally chose to withhold same from counsel. 

 It may well be that moving for a continuance would have ameliorated counsel's
surprise. Yet, the punishment hearing had already been postponed once since appellant
had not performed various tasks desired by his attorney. So, the decision to forego
additional delay may well have been a trial strategy. 

 Moreover, we opt not to fault trial counsel for the intentional withholding of vital
information by his client. See Cannon v. State, 668 S.W.2d 401, 403 (Tex. Crim. App.
1984) (refusing to hold counsel ineffective when the defendant failed to impart sufficient
information to counsel); Hernandez v. State, 885 S.W.2d 597, 601-602 (Tex. App.--El Paso
1994, no pet.) (recognizing that the defendant's failure to provide his attorney with relevant
information defeats a later claim of ineffective assistance because the attorney failed to
obtain particular information). In short, the relationship between counsel and client is
somewhat reciprocal. While counsel has a duty to be reasonably effective, his client must
forego that which impedes counsel's ability to reasonably perform. Additionally,
withholding information relevant to one's defense is such an impediment. In other words,
a client has a duty to disclose information pertinent to his defense. Should the client
withhold same, then he may not complain about the effect his own evasive conduct had
upon the performance of counsel. (3) Any other result would be to allow a defendant to
benefit from his own mis or non-feasance, and, this we will not permit. 

 Nor has appellant deigned to illustrate how the outcome would have differed had
trial counsel obtained a continuance. Admittedly, counsel would have had more time to
address the matter, but that does not mean that more time would have likely resulted in a
different outcome. Indeed, what it may have done was provide the State with opportunity
to prove the allegations regarding the Corpus Christi burglary via live witnesses. And, from
that, one could hardly reason that the punishment ultimately assessed would have differed.

 Sixth Amendment

 Lastly, appellant contends that trial counsel's "most devastating error" at the
punishment hearing involved his failure to protect his client's Sixth Amendment right to
counsel with respect to the Corpus Christi offense. Objections on that basis could have
kept out much of the damaging evidence, appellant suggests. "Counsel not only failed to
make those objections, but added to the breach . . . with his own questioning," he 
concludes. Furthermore, appellant relies extensively on the case of Westbrook v. State,
29 S.W.3d 103 (Tex. Crim. App. 2000), as support for the proposition that the Sixth
Amendment was violated. Again, we overrule the point. 

 As for Wesbrook, it involved a situation wherein the state arranged to have an
informant obtain incriminating information from the accused once the right to counsel had
been invoked. Here, appellant cites us to no evidence illustrating that the State
intentionally created a situation likely to induce appellant to reveal incriminating matter
about the Corpus Christi burglary when it mentioned the offense in the PSI. The creation
of such a circumstance is what the Wesbrook court deemed pivotal in assessing whether
the Sixth Amendment had been violated. Wesbrook v. State, 29 S.W.3d at 118. 

 Nor can it be said that the State lacked legitimate basis for alluding to the Corpus
Christi prosecution in the first place. This is so because statute allowed it to present
evidence of extraneous bad acts which the court could then weigh in setting punishment. 
Tex. Code Crim. Proc Ann. art. 37.07, §3 (Vernon Supp. 2002).

 Nor is there evidence that appellant's defense counsel was acting as agent for the
State when he opened the door to questions about the burglary in Corpus Christi. Had
such evidence been tendered then the holding of Wesbrook may have had application at
bar. Rather, it is quite reasonable to infer that counsel asked about the offense as part of
the overall defense strategy to be open, honest and forthcoming with the court. Indeed,
that appellant had been accused of the crime was a fact which trial counsel could have
legitimately felt needed attention. And, once the topic was broached by trial counsel, the
State was free to pursue it as well. 

 Thus, we perceive no violation of the Sixth Amendment. Nor can we say that the
decision of trial counsel to question appellant about the offense was not reasonable trial
strategy. So, again, the trial court did not abuse its discretion in refusing to grant a new
trial.

 Accordingly, we affirm the judgment of the trial court.


 Brian Quinn

 Justice


Publish.

1. Appellant did not recall trial counsel discussing the topic of criminal trespass with him. Yet, appellant
also failed to recall the trial judge's admonishments regarding punishment even though it is indisputable that
such admonishments were given him by the trial judge. Thus, the trial court was entitled to discredit
appellant's testimony and credit that of the purportedly defective counsel. So too could the trial court have
discredited the testimony of appellant's father wherein he stated that the topic of criminal trespass as a lesser
included offense was never discussed. Simply put, the trial judge as factfinder is entitled to choose who to
believe when the testimony of one witness contradicts that of another. See Salazar v. State, 38 S.W.3d 141,
148 (Tex. Crim. App. 2001) (stating that the trial court is the sole judge of the witness' credibility when
determining whether to grant a new trial); Dusenberry v. State, 915 S.W.2d 947, 949 (Tex. App.--Houston
[1st Dist.] 1996, pet. ref'd) (holding that the trial court has broad discretion in assessing the credibility of the
witnesses presented at a new trial hearing).
2. Appellant cites us to a portion of the record wherein the trial court mentioned the word "agreement"
and argues that the trial court's use of the word illustrates the existence of an agreement to so restrict the
presentation of evidence. Appellant's allusion to the passage is quite misleading, however, for the trial court
was referring to the absence of an "agreement" with regard to punishment. It was not referring to an
agreement to limit the nature of evidence which the litigants could offer at the punishment hearing. 
3. This obligation differs little from that imposed upon parties to a contract. It has long been an
established tenet of law that a party to an agreement may not interfere with the performance of the contractual
duties undertaken by the other. Henderson v. Central Power & Light Co., 977 S.W.2d 439, 448 (Tex.
App.-Corpus Christi 1998, pet. denied). Though fiduciary, the relationship between attorney and client has
contractual overtone. So, little reason exists to insulate the relationship from basic rules of contractual law.