NO. 07-00-0572-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

APRIL 24, 2002
_____

JONATHAN AARON RODRIGUEZ,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 351ST DISTRICT COURT OF HARRIS COUNTY;

NO. 847,477; HON. MARK KENT ELLIS, PRESIDING
_____

Before BOYD, C.J., QUINN, and REAVIS, J.J.

Jonathan Aaron Rodriguez (appellant) appeals his conviction for burglary of a habitation. Through five issues, he asserts that his guilty plea was involuntary and that his counsel was ineffective. We affirm.

### *Background*

On June 14, 2000, eleven-year-old J. H. and her six-year-old younger sister, K. H., were at home when they heard someone ring the doorbell and then "hit the [front] door a couple of times really hard . . . ." After looking through the peephole, J.H. saw a white male later identified as appellant's juvenile co-defendant. J.H. "didn't want them to look through

the back door to see if anybody was there, so [she and her sister] went to [her] parents' room." When she heard "the [back] door bust open" she called the police. The dispatcher on the phone told her to look out the bedroom door to see if anybody was there or if it had just been her imagination. When she looked, she saw another white male, later identified as the appellant. She heard him say "[s]omebody's here." She then shut the door because she was scared.

According to the PSI (presentence investigation) report, when the suspects realized the house was occupied they ran out the back door. J.H. proceeded to give a description of the two males to the police. Officer J. Robles was dispatched to the house. He noticed two individuals (appellant and his brother) walking along the sidewalk outside the house. The two matched J.H.'s description of the intruders. Robles detained them, and, J.H. subsequently identified appellant as one of the individuals who entered the house.

Appellant initially claimed he was not involved in the incident because he had been at a friend's house. The officers walked over to the friend's house and asked to speak with him. The juvenile co-defendant volunteered to return with the officer to the scene of the crime. The juvenile suspect told Officer Seagler that he and the appellant had indeed made entry into the house, that it had been appellant's idea, and that the appellant had kicked in the door. The juvenile acknowledged that after he had knocked on the front door, he and appellant went around to the back door and entered the house.

According to the PSI, the juvenile co-defendant stated that "[they] were gonna get shit." They then looked around the house. Upon seeing J.H., the two exited the abode, jumped the fence, and ran home. Furthermore, appellant eventually admitted that he had entered the house and that the burglary was his idea.

2

Appellant entered an open plea of guilty to the second degree felony offense of burglary of a habitation. He was then admonished by the court in accordance with the Code of Criminal Procedure. At his hearing on the matter, sentencing was deferred pending development of the PSI. Upon receiving the document, the trial court held a punishment hearing and ultimately sentenced appellant to ten years imprisonment.

### *Standard of Review*

The complaints asserted at bar were urged below via a motion for new trial. The latter was denied by the trial court. Thus, the pertinent standard of review is one of abused discretion. *Salazar v. State*, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001). And, unless the decision rendered by the trial court fell outside the zone of reasonable disagreement, we must let it stand. *Burden v. State,* 55 S.W.3d 608, 615 (Tex. Crim. App. 2001) (stating that discretion is abused when the decision falls outside the zone of reasonable disagreement).

### *Issues One, Two and Three – Plea Involuntary Due to Ineffective Counsel*

Through his first three issues, appellant contends that his guilty plea was involuntary because his trial counsel was ineffective. Furthermore, counsel was allegedly ineffective because he failed to interview two witnesses and inform appellant about the supposed lesser included offense of criminal trespass. We overrule the contentions for the following reasons.

First, regarding the failure to interview two prospective witnesses, the witnesses were the two young children who were alone when appellant entered the house. The observations of one child appear in the presentence report and serve to place appellant within the house after he forced his way inside. Yet, her statement does not reveal what

3

information she or her sister had which would have been beneficial to appellant had either child been interviewed by counsel. Nor does appellant clarify the situation. He called neither as witnesses at the hearing on his motion for new trial and now merely concludes that their "testimony . . . would be crucial in a trial." Thus, we have before us a situation wherein the appellant accuses counsel of being less than diligent in securing evidence while failing to illustrate how it would benefit his defense. And, given this situation, we are unable to hold that the trial court abused its discretion in rejecting appellant's contention. *See Wilkerson v. State*, 726 S.W.2d 542, 550-51 (Tex. Crim. App. 1986), *cert. denied*, 493 U.S. 924, 107 L.Ed.2d 272, 110 S.Ct. 292 (1989)(holding that absent a showing that potential defense witnesses were available *and* that their testimony would benefit the defense, "counsel's failure to call witnesses is of no moment"). Simply put, it is not enough to merely conclude that evidence exists which could have been discovered and would have been beneficial. Rather, the burden lies with the complainant to illustrate what that evidence is and illustrate how it would have materially aided him.

Second, regarding the possibility of obtaining a conviction for the lesser included offense of criminal trespass, trial counsel testified that he discussed the topic of lesser included offenses with appellant. This was done for the purpose of assessing available options, given what was known about the case, "what may or may not be admissible by and through the evidence that's in that offense report," and the admissions of guilt by both the co-defendant and appellant. And, while counsel did not "specifically narrow it down to if he wanted to go to trial to possibly get a lesser included offense," the two discussed the situation in terms of whether "or not did he want the case tried or did he want to pursue the

4

other options."[1]  Thereafter, appellant and trial counsel settled on a strategy focusing upon the punishment phase of the trial and securing probation.  Thus, we have of record evidence illustrating that appellant and his counsel discussed the topic of lesser included offenses and, thereafter, chose to pursue a course of action they considered to be the better option.  And, given this evidence, we cannot fault the trial court for rejecting this ground as a basis for new trial.

Third, regarding the purported breach of an agreement to forego live testimony at the punishment hearing, we note a dearth of evidence evincing such an agreement.  Instead, appellant suggests that such an agreement was implied from the State's "agreement to utilize a PSI report."  Yet, he cites no authority in support of the proposition.  Given his failure to cite authority, the issue was insufficiently briefed and, therefore, waived.  *See Maldonado v. State*, 902 S.W.2d 708, 711 (Tex. App.–El Paso 1995, no writ) (holding that the failure to provide legal citation in support of an issue results in the waiver of that issue).  So too did appellant neglect to cite us to any evidence illustrating that the State and defense discussed the possibility of so limiting their respective presentations or actually agreed to such a limitation.  And, that he may have subjectively believed that only the PSI was to be considered, his counsel not only knew that the State intended to call live

---

[1]Appellant did not recall trial counsel discussing the topic of criminal trespass with him. Yet, appellant also failed to recall the trial judge's admonishments regarding punishment even though it is indisputable that such admonishments were given him by the trial judge.  Thus, the trial court was entitled to discredit appellant's testimony and credit that of the purportedly defective counsel.  So too could the trial court have discredited the testimony of appellant's father wherein he stated that the topic of criminal trespass as a lesser included offense was never discussed.  Simply put, the trial judge as factfinder is entitled to choose who to believe when the testimony of one witness contradicts that of another. *See Salazar v. State*, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001) (stating that the trial court is the sole judge of the witness' credibility when determining whether to grant a new trial); *Dusenberry v. State,* 915 S.W.2d 947, 949 (Tex. App.--Houston [1st Dist.] 1996, pet. ref'd) (holding that the trial court has broad discretion in assessing the credibility of the witnesses presented at a new trial hearing).

witnesses but also intended to present live testimony himself.[2] These indicia hardly compelled the trial court to find that the litigants entered into an agreement of the nature now urged by appellant. Consequently, the trial court was within its discretion to reject this ground as a basis for new trial, as well.

### Issues Four and Five – Ineffective Counsel at Punishment

Through his remaining two issues, appellant claims that his counsel rendered ineffective assistance during the punishment stage of trial because he was inadequately prepared and failed to protect appellant's Sixth Amendment rights regarding a pending criminal matter in Corpus Christi. We again overrule the issues.

Regarding the matter of inadequate preparation, four instances are cited by appellant. They involve 1) the failure to interview the two child witnesses mentioned above, 2) the presentation of Milton Hinkle (the children's father) as a defense witness, 3) the failure to present live testimony at the punishment hearing on behalf of appellant, and 4) the lack of adequate time to review the PSI. We consider each in the order mentioned.

*Failing to Interview the Hinkle Children*

As discussed above, appellant fails to provide us with evidence illustrating that the two lone children (whom he frightened upon forcibly entering their home) had testimony which could be used to his advantage on the issue of punishment. Without such evidence, we cannot say that the trial court erred in rejecting this ground as basis for new trial. *See Wilkerson v. State*, *supra*.

---

[2]Appellant cites us to a portion of the record wherein the trial court mentioned the word "agreement" and argues that the trial court's use of the word illustrates the existence of an agreement to so restrict the presentation of evidence. Appellant's allusion to the passage is quite misleading, however, for the trial court was referring to the absence of an "agreement" with regard to punishment. It was not referring to an agreement to limit the nature of evidence which the litigants could offer at the punishment hearing.

*Using Milton Hinkle as a Defense Witness*

Appellant argues counsel was ineffective because he called Milton Hinkle as a defense witness even though the two had not spoken prior to the punishment hearing. Like many of his other contentions, this one too consisted of mere conclusions *sans* citation to authority. Thus, it was waived.

Furthermore, the individual who created the PSI stated therein that Hinkle "expressed he would want the court to stipulate Boot Camp as a condition of probation." Given that Hinkle expressed a belief suggesting that he favored probation and boot camp, counsel could have thought it effective trial strategy to call him as a witness and have him reiterate the belief in open court. That it may have been better to first question Hinkle outside the courtroom about his comment seems obvious. Yet, we do not live in a world wherein one has ample time to do all that he may wish to. Indeed, in the heat of trial, instantaneous decisions must be made not only by the trial court but by counsel as well. And, that these decisions may later lead to unexpected consequence does not render counsel ineffective when, as here, arguable basis exists for making the decision. Thus, we do not find that the trial court abused its discretion when refusing to grant a new trial on the ground now urged by appellant.

*Preparation of Live Favorable Testimony*

Appellant next claims that counsel was ineffective because he was not prepared to present live testimony from defense witnesses at the punishment hearing. However, the record belies appellant's argument. It reflects that trial counsel told the court that "it was [his] intention to have the family members come up [to the witness stand] as a group" and asked whether the court would prefer them to speak individually. The court then instructed

7

counsel to "tell me who they are . . . I've read all their letters and I feel like I understand their feelings in this situation." Counsel then proceeded to call three witnesses, Hinkle, appellant, and Karen Thompson (appellant's mother). Thus, evidence appears of record illustrating that counsel not only was prepared to call witnesses at the hearing but actually did so, and the trial court was within its discretion to reject this ground for new trial as well.

*Not having Sufficient Time to Review PSI Report*

Appellant also suggests that his attorney was inadequately prepared because he failed to move for a continuance upon discovering immediately before the hearing that there pended against his client a similar prosecution in Corpus Christi. The information at issue was discovered via the PSI. And, though appellant and his father knew of it, they intentionally chose to withhold same from counsel.

It may well be that moving for a continuance would have ameliorated counsel's surprise. Yet, the punishment hearing had already been postponed once since appellant had not performed various tasks desired by his attorney. So, the decision to forego additional delay may well have been a trial strategy.

Moreover, we opt not to fault trial counsel for the intentional withholding of vital information by his client. *See Cannon v. State,* 668 S.W.2d 401, 403 (Tex. Crim. App. 1984) (refusing to hold counsel ineffective when the defendant failed to impart sufficient information to counsel); *Hernandez v. State,* 885 S.W.2d 597, 601-602 (Tex. App.--El Paso 1994, no pet.) (recognizing that the defendant's failure to provide his attorney with relevant information defeats a later claim of ineffective assistance because the attorney failed to

8

obtain particular information). In short, the relationship between counsel and client is somewhat reciprocal. While counsel has a duty to be reasonably effective, his client must forego that which impedes counsel's ability to reasonably perform. Additionally, withholding information relevant to one's defense is such an impediment. In other words, a client has a duty to disclose information pertinent to his defense. Should the client withhold same, then he may not complain about the effect his own evasive conduct had upon the performance of counsel.[3] Any other result would be to allow a defendant to benefit from his own mis or non-feasance, and, this we will not permit.

Nor has appellant deigned to illustrate how the outcome would have differed had trial counsel obtained a continuance. Admittedly, counsel would have had more time to address the matter, but that does not mean that more time would have likely resulted in a different outcome. Indeed, what it may have done was provide the State with opportunity to prove the allegations regarding the Corpus Christi burglary via live witnesses. And, from that, one could hardly reason that the punishment ultimately assessed would have differed.

*Sixth Amendment*

Lastly, appellant contends that trial counsel's "most devastating error" at the punishment hearing involved his failure to protect his client's Sixth Amendment right to counsel with respect to the Corpus Christi offense. Objections on that basis could have kept out much of the damaging evidence, appellant suggests. "Counsel not only failed to make those objections, but added to the breach . . . with his own questioning," he

---

[3]This obligation differs little from that imposed upon parties to a contract. It has long been an established tenet of law that a party to an agreement may not interfere with the performance of the contractual duties undertaken by the other. *Henderson v. Central Power & Light Co.*, 977 S.W.2d 439, 448 (Tex. App.–Corpus Christi 1998, pet. denied). Though fiduciary, the relationship between attorney and client has contractual overtone. So, little reason exists to insulate the relationship from basic rules of contractual law.

9

concludes. Furthermore, appellant relies extensively on the case of *Westbrook v. State*, 29 S.W.3d 103 (Tex. Crim. App. 2000), as support for the proposition that the Sixth Amendment was violated. Again, we overrule the point.

As for *Wesbrook*, it involved a situation wherein the state arranged to have an informant obtain incriminating information from the accused once the right to counsel had been invoked. Here, appellant cites us to no evidence illustrating that the State intentionally created a situation likely to induce appellant to reveal incriminating matter about the Corpus Christi burglary when it mentioned the offense in the PSI. The creation of such a circumstance is what the *Wesbrook* court deemed pivotal in assessing whether the Sixth Amendment had been violated. *Wesbrook v. State*, 29 S.W.3d at 118.

Nor can it be said that the State lacked legitimate basis for alluding to the Corpus Christi prosecution in the first place. This is so because statute allowed it to present evidence of extraneous bad acts which the court could then weigh in setting punishment. TEX. CODE CRIM. PROC ANN. art. 37.07, §3 (Vernon Supp. 2002).

Nor is there evidence that appellant's defense counsel was acting as agent for the State when he opened the door to questions about the burglary in Corpus Christi. Had such evidence been tendered then the holding of *Wesbrook* may have had application at bar. Rather, it is quite reasonable to infer that counsel asked about the offense as part of the overall defense strategy to be open, honest and forthcoming with the court. Indeed, that appellant had been accused of the crime was a fact which trial counsel could have legitimately felt needed attention. And, once the topic was broached by trial counsel, the State was free to pursue it as well.

10

Thus, we perceive no violation of the Sixth Amendment. Nor can we say that the decision of trial counsel to question appellant about the offense was not reasonable trial strategy. So, again, the trial court did not abuse its discretion in refusing to grant a new trial.

Accordingly, we affirm the judgment of the trial court.

Brian Quinn
Justice

Publish.