Affirmed and Memorandum Opinion filed March 22, 2005









Affirmed
and Memorandum Opinion filed March 22, 2005.

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-03-01174-CR

_______________

 

VINCENT DEE SMITH, Appellant

 

V.

 

THE STATE
OF TEXAS, Appellee

_________________________________________________________

 

On Appeal from the 337th District Court

Harris County, Texas

Trial Court Cause No. 944,657

_________________________________________________________

 

M E M O R A N D
U M   O P I N I O N

A jury found appellant, Vincent Dee Smith, guilty of
possession of a controlled substance.  He
appeals his conviction on the grounds that the trial court erred by (1)
overruling his objection to improper jury argument, and (2) denying his motion
for new trial based on ineffective assistance of counsel.  Because all dispositive issues are clearly
settled in law, we issue this memorandum opinion and affirm.  See Tex.
R. App. P. 47.4. 

I.  Background








On April 4, 2003, Harris County Sheriff Deputies Silvio and
Malinowski responded to a disturbance call at the home of appellant=s parents.  Deputy Silvio testified that upon arriving at
the home, he saw appellant standing in the front yard.  Deputy Silvio also observed another male and
a female standing near a vehicle parked in the street.  Deputy Silvio testified that for his safety
he conducted a pat-down search for weapons on appellant, and he discovered a
glass pipe containing cocaine residue in appellant=s pocket. 

Deputy Malinowski testified that when he arrived at the home,
he approached the male and female standing near the vehicle.  He testified that he saw Deputy Silvio
conduct a pat-down search of appellant, but he did not actually see Deputy
Silvio recover the pipe from appellant=s pocket.

Appellant was the only witness to testify for the
defense.  He testified that a
neighborhood officer responded to the disturbance call before Deputies Silvio
and Malinowski.  Appellant testified that
he was sitting in the back of the neighborhood officer=s patrol car when Deputies Silvio and
Malinowski arrived, and that Deputy Silvio never performed a pat-down
search.  Appellant testified that the
officers recovered three or four crack pipes from the purse of the female
standing near the street.

II.  Improper Jury Argument

In his first issue, appellant contends that the trial court
erred by permitting the prosecutor to comment on appellant=s non-testimonial demeanor during
jury argument in the guilt/innocence phase of the trial.  A proper jury argument must fall within one
of four general areas: (1) summation of the evidence, (2) reasonable deductions
from the evidence, (3) answer to the argument of opposing counsel, or (4) a
plea for law enforcement.  Guidry v.
State, 9 S.W.3d 133, 154 (Tex. Crim. App. 1999); Torres v. State, 92
S.W.3d 911, 920 (Tex. App.CHouston [14th Dist.] 2002, pet. ref=d). 
Generally, a prosecutor=s comments regarding the defendant=s non-testimonial courtroom demeanor
do not fit within one of the four approved areas, and therefore, are
improper.  See Good v. State, 723
S.W.2d 734, 736 (Tex. Crim. App. 1986).








A.        Prosecutor=s Comments

During closing argument, the prosecutor made the following
comments regarding appellant=s courtroom demeanor:

[Prosecutor]: 
[Appellant] even admits he=s never
met [the arresting officers].  They have
no reason to get up there and lie about him. 
He says he=s never been in trouble in his neighborhood; so why
would they beBwhy would they have this vendetta against him?  Why? 
He=s asking you to believe him, convicted dope dealer, a
burglar, a forger, a drug user, a crack pipe user, over officers, deputies that
were called out to a scene, checking by with a disturbance.  Who are you going to believe?  I=m not
asking you to try him because of his past, but that gives weight to his
credibility as a witness.

Why would he get up there and lie?  He=s got a
lot of reasons to get up there and lie. 
He knows he=s facing 20 years in prison in the penitentiary.  The officers, they don=t have any reason to lie . . . .

I think Mr. Smith=s
behavior in this court has been outrageous. 
The way he=s been acting in court, does it even surprise you he would get up thereB

[Defense Counsel]:  Your Honor, I object.  This is outside the record.

[The Court]:  Overruled.

[Prosecutor]: 
Didn=t it surprise you that he would get up there and lie
about officers.  The disrespect he=s shown this jury, the disrespect he=s shown me, the Court, his own lawyer, interrupting
her when she=s trying to make an objection. Did it even surprise
you that he would get up and act and lie the way that he did?

 

The record reflects that during Deputy Silvio=s testimony, appellant was squirming
around in his seat.  At some point in the
trial, appellant=s behavior became so disruptive that deputies had to sit
behind defense counsel.  In addressing
appellant=s argument, we will assume that the
prosecutor=s comment was also a reference to
this non-testimonial demeanor.








The context of the prosecutor=s statements shows that the comment
regarding appellant=s courtroom behavior was intended as an attack on appellant=s credibility as a witness.  At trial, appellant testified on his own
behalf, thereby subjecting his credibility to attack by evidence of prior
criminal convictions.  See Tex. R. Evid. 609.  The State suggests that because appellant
placed his credibility in issue, it was proper for the prosecutor to comment on
appellant=s non-testimonial courtroom demeanor
to attack his credibility.  Relying on Good,
the State contends that improper jury argument only occurs if the prosecutor
requests that the jury draw an inference of guilt.  We disagree. 

In Good, the prosecutor made the following statement
to the jury:

You observed his [appellant=s] demeanor in this courtroom and I submit to you it
is a reasonable deduction that he would have reacted in some way, shown some
concern.  He has just sat there cold,
unnerved, uncaring, just like he was that morning [of the burglary].  That tells you a great deal about him.  That has nothing to do with articulation or
being able to speak or education.  No,
that has to do with the fact that he is guilty and he could care less this week
that he is guilty and he could care less back on June 9th, 1983.

 

Good, 830
S.W.2d at 735 (emphasis in original).  In
finding that the prosecutor=s comments constituted reversible error, the Good Court
emphasized the harmfulness of the prosecutor arguing that a defendant=s non-testimonial demeanor is
evidence of guilt.  See id.
at 737.  However, the broader holding
in Good is that a defendant=s demeanor, in any respect other than
when he is testifying, is not subject to comment by the prosecutor.  See id. at 736 (AAllowing the State to summarize
appellant=s nontestimonial demeanor
impermissibly placed appellant=s demeanor before the jury through the prosecutor=s unsworn jury argument.@). 
Moreover, it is clear that comments regarding a defendant=s non-testimonial demeanor do not fit
within any of the permissible areas of jury argument.  See Guidry, 9 S.W.3d at 154.  

Because the prosecutor=s comment regarding appellant=s non-testimonial demeanor does not
fit within any of the permissible areas of jury argument, the trial court erred
in overruling appellant=s objection to the comment. 
Accordingly, we must consider the harmful effect of the error to
determine whether it warrants reversal.








B.        Harm Analysis

Erroneous rulings related to jury argument are generally
treated as non-constitutional error within Rule 44.2(b).  Martinez v. State, 17 S.W.3d 677, 692
(Tex. Crim. App. 2000); Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim.
App. 1998).  Rule 44.2(b) requires that
we disregard any error not affecting substantial rights.  Tex.
R. App. P. 44.2(b).  Stated
differently, A[a] criminal conviction should not be
overturned for non-constitutional error if the appellate court, after reviewing
the record as a whole, has fair assurance that the error did not influence the
jury or had but a slight effect.@ 
Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App.
1998).  When analyzing the harm caused by
an improper jury argument, we examine the following factors: (1) severity of
the misconduct (the magnitude of the prejudicial effect of the prosecutor=s comments), (2) measures adopted to
cure the misconduct, and (3) the certainty of conviction absent the
misconduct.  Mosley, 983 S.W.2d at
259.

1.         Severity Of The Misconduct

When considering this factor, we examine the egregiousness of
the prosecutor=s conduct in conjunction with the
prejudicial effect of the prosecutor=s comments.  Hawkins v. State, 135 S.W.3d 72, 77
(Tex. Crim. App. 2004). However, prejudice to the defendant is clearly the
touchstone of this factor.  Id.








In Good, the court found the prosecutor=s comment to be harmful because it
focused on the defendant=s neutral courtroom demeanor to draw an unreasonable
inference of guilt.  Good, 723
S.W.2d at 738.  Here, we do not find the
prosecutor=s comment to be as egregious as the
comment in Good.  The prosecutor
in this case did not focus on appellant=s neutral courtroom behavior
to draw an unreasonable inference of guilt.  Instead, the prosecutor focused on appellant=s disruptive courtroom behavior.  Further, even the court in Good
acknowledged the possibility that a jury might draw some conclusions from
watching a defendant during trial.  See
id. at 736 n.3.  Thus, while the
prosecutor should not have alluded to appellant=s disruptive behavior, we do not find
the comment to be as egregious as a reference to neutral courtroom
demeanor that draws an unreasonable inference of guilt.

More importantly, we find that the prejudicial effect on
appellant was minimal.  Unlike in Good,
the prosecutor in this case did not ask the jury to draw an inference of guilt
from appellant=s non-testimonial demeanor. Rather,
the prosecutor focused the jury=s attention on appellant=s non-testimonial demeanor to
challenge his credibility as a witness. 
The record reveals that appellant=s credibility had already been
significantly diminished through the introduction of his numerous prior
criminal convictions.  Moreover, the jury
was in a position to evaluate appellant=s non-testimonial demeanor on its
own.  Thus, the prosecutor=s comment did not likely have much
effect on the jury=s assessment of appellant=s credibility. 

2.         Measures Adopted to Cure the Misconduct

The trial court did not take any curative action because it
overruled appellant=s objection. 
Therefore, this factor weighs in appellant=s favor. 

3.         Certainty of the Conviction Absent The
Misconduct

The State=s evidence consisted of the testimony of two police
officers.  Deputy Silvio testified that
he searched appellant and found a pipe containing crack cocaine.  While Deputy Malinowski did not see whether
the pipe was retrieved from appellant, he did confirm that Deputy Silvio
conducted a pat-down search of appellant. 
This testimony refuted appellant=s testimony that the officers never
conducted a search.

The only counter-evidence offered by appellant was his own
testimony.  Appellant claimed that
Officer Silvio never conducted a pat-down search.  As noted earlier, the credibility of appellant=s testimony was significantly
diminished by the introduction of his numerous prior criminal convictions.  Thus, there was a substantial certainty of
appellant=s conviction absent the improper jury
argument. 








After examining the prosecutor=s comment in light of the Mosely factors,
we find that although the comment was improper, there was insufficient harm to
warrant reversal of appellant=s conviction.  We
overrule appellant=s first issue.  

III.  Motion for New Trial

In his second issue, appellant contends that the trial court
erred by denying his motion for new trial based on ineffective assistance of
counsel.  Appellant complains his trial
counsel was ineffective for (1) failing to interview or call witnesses to
testify on his behalf during the guilt/innocence phase of the trial, and (2)
failing to call witnesses to testify regarding mitigating factors during the punishment
phase.   

A.        Standard
of Review

We review a trial court=s denial of a motion for new trial
for abuse of discretion.  Salazar v.
State, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001).  To demonstrate ineffective assistance of
counsel in a motion for new trial, a defendant must show (1) counsel=s performance fell below an objective
standard of reasonableness under prevailing standards of professional norms,
and (2) there is a reasonable probability that, but for counsel=s deficient performance, the result
of the proceeding would have been different. 
Strickland v. Washington, 466 U.S. 668, 688 (1984); Rodriquez
v. State, 899 S.W.2d 658, 664 (Tex. Crim. App. 1995).  In considering the first prong, we indulge a
strong presumption that counsel=s actions fell within the range of reasonable professional
behavior.  Thompson v. State, 9
S.W.3d 808, 813 (Tex. Crim. App. 1999). 
To overcome this presumption, an allegation of ineffectiveness must be
firmly demonstrated in the record.  Id.  We assume counsel=s actions and decisions were
reasonably professional and motivated by sound trial strategy.  Jackson v. State, 877 S.W.2d 768, 771
(Tex. Crim. App. 1994).








B.        Guilt/Innocence
Stage of Trial

Appellant
first contends that defense counsel was ineffective for failing to contact or
interview potential witnesses to testify at the guilt/innocence stage of
trial.  Defense counsel has the duty to
make an independent investigation of the facts and circumstances of the case by
seeking out and interviewing potential witnesses.  Ex Parte Welborn, 785 S.W.2d 391, 393
(Tex. Crim. App. 1990); Ex Parte Ybarra, 629 S.W.2d 943, 946 (Tex. Crim.
App. 1982). Although counsel must make reasonable investigations of the case,
counsel may decide further investigation is unnecessary.  Strickland, 466 U.S. at
691.  We assess counsel=s decision not to investigate further
for reasonableness in all the circumstances then existing, applying a heavy
measure of deference to counsel=s judgments.  Id.


At the
hearing on the motion for new trial, appellant introduced affidavits from three
individuals stating that they would have testified on appellant=s behalf at the guilt/innocence stage
of the trial.  Doris Washington,
appellant=s aunt, averred that she was at the
home of appellant=s parents when appellant was arrested, and she never saw the
police officers search appellant.  She
stated that she was never contacted by appellant=s counsel before trial. 

Joyce
Eaden, appellant=s mother, averred that she was watching from her front door
when appellant was arrested, and the police officers never searched
appellant.  Eaden stated that she was
never contacted by appellant=s counsel before trial, although she tried to contact counsel
many times.  

Finally,
John Buck, appellant=s neighbor, averred that on the day appellant was arrested,
Buck drove past the home of appellant=s parents several times.  Buck stated that the first time he drove by,
only one police officer was at the house. 
Buck stated that appellant was sitting in the back of the officer=s car, and that appellant was not
causing a disturbance.  Buck stated that
he again drove by appellant=s house about forty-five minutes later.  At that time, there were two patrol cars
present, and appellant was still sitting in the first patrol car.








At the
hearing on the motion for new trial, defense counsel testified that before
trial she met with appellant and discussed the witnesses listed in the offense
report.  She also requested that
appellant provide her with a list of potential witnesses so they could be
subpoenaed for trial, but appellant never provided her with the names of any
witnesses.

The
record further reflects that just before voir dire, appellant informed the
court that he had witnesses to testify on his behalf, but trial counsel had not
subpoenaed any of them.  Counsel informed
the court that, before trial day, she did not know appellant had any witnesses,
and if she had known, she would have secured their presence at trial.  Following voir dire and jury selection, the
court recessed early so that appellant=s witnesses could be subpoenaed.  At that time, counsel spoke to appellant
about contacting the witnesses.  Counsel
testified as follows:

I informed
[appellant] that I had an investigator who was on call.  When I went to the holdover, that I would
miss lunch, contact the investigator, that the investigator Randy Cunningham
would actually go out and bring his witnesses to court, if necessary, and that
we would have them here; just give me the names.  [Appellant] informed me that he wanted to get
his own witnesses and he would not give me the names of any witnesses.  He would bring his own witnesses to court.

 








Based on
defense counsel=s testimony, it is apparent that appellant not only refused
to cooperate with defense counsel in locating witnesses, but also informed
counsel that he desired to procure the presence of his own witnesses.[1]  Appellant contends that even if he was Atotally uncooperative and refused to
name the witnesses as trial counsel testified, it is still counsel=s duty to attempt to locate witnesses
helpful to the defense.@  Appellant maintains
that defense counsel must make an independent investigation regardless of
complications in a given case.  See Ex
Parte Duffy, 607 S.W.2d 507, 517 (Tex. Crim. App. 1980), overruled on
other grounds by Hernandez v. State, 726 S.W.2d 53 (Tex. Crim. App.
1986)).   

However,
while counsel has a duty to investigate the facts of a given case, her client
has a reciprocal duty to forego that which impedes counsel=s ability to reasonably perform.  See Rodriquez v. State, 74 S.W.3d 563,
569 (Tex. App.CAmarillo 2002, pet. ref=d). Withholding the identity of
potential witnesses is such an impediment. 
See Cannon v. State, 668 S.W.2d 401, 403 (Tex. Crim. App.
1984) (refusing to hold counsel ineffective when the defendant failed to impart
sufficient information to permit trial counsel to determine the identity of
supposedly key witnesses).  When a
defendant withholds information that is vital to his defense, he may not
complain about the effect that his own evasive conduct had upon the performance
of counsel.  See Rodriquez, 74
S.W.3d at 569.  AAny other result would be to allow a
defendant to benefit from his own mis or non-feasance, and, this we will not
permit.@ Id.  Therefore, under the circumstances of this
case, the trial court was not required to find defense counsel ineffective for
failing to interview these potential witnesses whose names appellant already
knew but withheld.  








Appellant
further contends his uncooperativeness did not excuse defense counsel from
failing to interview his mother, Joyce Eaden, because counsel had independent
knowledge that Eaden was at home when appellant was arrested.[2]  Appellant relies on Butler v. State,
in which defense counsel was found to be ineffective when he failed to
interview a potential alibi witness that he knew lived with the defendant, even
though counsel was unaware whether the witness was home at the time the offense
was committed.  716 S.W.2d 48, 55 (Tex.
Crim. App. 1986).  We agree that the
facts in this case are somewhat analogous to those in Butler. However,
we note that each case involving the constitutional issue of ineffectiveness of
counsel must be evaluated based on the specific conduct of the parties
involved.  See Strickland, 466
U.S. at 691.  Because the reasonableness
of counsel=s actions may be substantially
influenced by the defendant=s own words or actions, such facts are pertinent to
evaluating defense counsel=s representation.  Id.


Here,
before trial, counsel consulted with appellant about the case and requested a
list of potential witnesses. Despite defense counsel=s efforts, appellant never informed
counsel that Eaden could be a beneficial witness.  Moreover, appellant informed counsel that he
did not want to speak with counsel about witnesses and that he would Aget his own witnesses.@ 


Further,
counsel testified that before trial she spoke with appellant=s father on a number of occasions;
yet nothing in the record suggests that appellant=s father informed counsel that Eaden
witnessed appellant=s arrest.  Further, at
the hearing, defense counsel was asked if she recalled speaking with
Eaden.  Defense counsel responded, AI don=t recall.  Now, I could have, because I called the house
a number of times, and what the father had told me definitely would not have
been a benefit to call, not for the defense. 
It would have been for them to call, the prosecutors to call, but not
for the defense.@ 

Based
upon the circumstances of this case, we conclude that defense counsel=s failure to conduct further
investigation into Eaden=s potential testimony was plausible.  Counsel could have reasonably concluded in
her professional judgment that based upon the information provided by appellant=s father and appellant=s own words and actions, any further
investigation would not have been fruitful. 
Therefore, the trial court did not abuse its discretion in concluding
that counsel=s actions in this case did not rise
to the level of constitutional ineffectiveness. 

C.        Punishment
Stage of Trial








Appellant
also contends defense counsel was ineffective for failing to contact witnesses
to testify regarding mitigating factors during the punishment phase of
trial.  In their affidavits, Washington,
Eaden, Buck, and appellant=s father each stated that they were willing to testify at the
punishment phase of trial.  They averred
that they would have told the jury about appellant=s good qualities, his childhood, his
drug problem, and his mental problems and asked the jury to show him mercy.

Appellant
relies on Milburn v. State, in which this court held that defense
counsel was ineffective for failing to interview or call any witnesses during
the punishment phase of trial.  15 S.W.3d
267, 270 (Tex. App.CHouston [14th Dist.] 2000, pet. ref=d). 
In Milburn, defense counsel admitted that he neither investigated
nor evaluated available punishment evidence.[3]  Id. 
Conversely, in this case, despite appellant=s refusal to provide counsel with the
names of potential witnesses, counsel investigated and evaluated at least some
potential punishment evidence.  Counsel
testified that before trial she spoke with appellant=s father on a number of occasions,
but determined that he would not testify. 
Strategic choices made after reasonable investigation are virtually
unchallengeable.  Strickland, 466
U.S. at 690.  Moreover, when viewed in
the context of appellant=s refusing to provide counsel with a list of potential
witnesses, and appellant=s assertion that he would get his own witnesses, defense
counsel=s 
failure to further investigate the testimony of potential witnesses was
plausible and does not give rise to constitutional ineffectiveness.  

We
overrule appellant=s second issue. 
Accordingly, the judgment of the trial court is affirmed.

 

/s/        Charles
W. Seymore

Justice

 

Judgment rendered and Memorandum
Opinion filed March 22, 2005.

Panel consists of Chief Justice
Hedges and Justices Edelman and Seymore.

Do Not Publish C Tex.
R. App. P. 47.2(b).

 











[1]  Contrary to
defense counsel’s testimony, appellant stated in his affidavit that he did
inform defense counsel that he wanted his mother, aunt, and neighbor to
testify.  However, the trial court
maintains the authority to judge the credibility of the witnesses and the
weight given to their testimony.  See
Haygood v. State, 127 S.W.3d 805, 814 (Tex. App.CSan Antonio 2003, pet. ref=d). 





[2]  At the hearing
on the motion for new trial, defense counsel testified that based on “prior
conversations,” she believed Eaden was at home when appellant was arrested.





[3]  As we noted in
Milburn, counsel in that case performed no investigation into any
possible mitigating factors and failed to contact even a single family member
or friend, despite the availability of such mitigation evidence.  Id. at 270.