

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-17-00100-CR
_____

JOSHUA SAUSEDA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 361st District Court
Brazos County, Texas[1]
Trial Court No. 16-02439-CRF-361, Honorable Steven Lee Smith, Presiding

September 25, 2018

MEMORANDUM OPINION

Before CAMPBELL and PIRTLE and PARKER, JJ.

Joshua Sauseda, appellant, appeals his convictions for aggravated sexual assault of a child and indecency with a child.[2]  In one issue, he argues that his trial counsel "was grossly ineffective in a multitude of ways."  The record does not show counsel's

_____

[1] Originally appealed to the Tenth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts.  See TEX. GOV'T CODE ANN. § 73.001 (West 2013).  Should a conflict exist between precedent of the Tenth Court of Appeals and this Court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court. TEX. R. APP. P. 41.3

[2] See TEX. PENAL CODE ANN. §§ 22.11, 22.021 (West Supp. 2017).

explanations for his acts and, consequently, does not show that counsel's representation was constitutionally deficient. We affirm.

## Background

Because appellant does not challenge the sufficiency of the evidence presented at trial to support his conviction, we provide only such facts as will assist in an understanding of the issue he presents on appeal.

Appellant was charged with two offenses: count 1 alleged appellant committed aggravated sexual assault of a child, "Tasha," on or about December 1, 2014; count 2 alleged he committed indecency with a child, "Mia," on or about May 1, 2015.[3] Appellant pleaded not guilty to both counts. Tasha and Mia are sisters. At the time of trial, Tasha was fifteen and Mia was seventeen.

The evidence showed that, in December of 2014, when Tasha was thirteen years old, she visited the home of her cousin, "Melanie," in College Station. Melanie lived with her mother and three siblings. Appellant, who was in his twenties, was dating Melanie and also lived with the family. Tasha related that when she was in bed one night, appellant entered the room where she was sleeping, got into bed with her, and "put his private part inside [her] private part." Tasha told her best friend about the assault the next day and later told her mother.

Mia testified that in the summer of 2015, she went to visit Melanie's family. After Mia had gone to bed, appellant came into her room and began touching her. Appellant

---

[3] We will use pseudonyms to protect the privacy of the complainants involved. *See Linney v. State*, 401 S.W.3d 764, 769 n.1 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).

moved his hands up and down Mia's thighs and then began rubbing her breasts on top of her bra. He tried to unbutton Mia's pants but Mia turned away and told him "no." He eventually left the room. Mia told a friend about the incident a few days later.

Appellant was subsequently indicted for the two offenses identified above, and the jury found him guilty of both. The trial court assessed punishment of ninety years' imprisonment on the first count and twenty years' imprisonment on the second count, to run concurrently.

By this appeal, appellant contends that his trial counsel was constitutionally ineffective because he failed to cross-examine crucial witnesses, allowed the State to lead witnesses without objection, made a weak closing argument, and performed poorly during the punishment phase of the trial.

Standard of Review

The United States Constitution guarantees the right to counsel, which encompasses the right to effective assistance of counsel. U.S. CONST. amend. VI; *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Texas courts apply the two-pronged test set forth in *Strickland* when determining whether counsel's representation was so inadequate as to violate a defendant's Sixth Amendment right to counsel. *See Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986) (en banc). Judicial review of an ineffective assistance of counsel claim must be highly deferential, and there is a strong presumption that trial counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. To establish ineffective assistance of counsel, an appellant bears the burden of proving by a

3

preponderance of the evidence that (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the appellant. *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). Failure to make the required showing of either deficient performance or sufficient prejudice is fatal to an ineffectiveness claim. *See id.*

The right to effective assistance of counsel ensures "reasonably effective," but not "perfect" assistance. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). "Isolated instances in the record reflecting errors of omission or commission do not render counsel's performance ineffective, nor can ineffective assistance of counsel be established by isolating one portion of trial counsel's performance for examination." *Id.* (quoting *McFarland v. State*, 845 S.W.2d 824, 843 (Tex. Crim. App. 1992) (en banc)). Counsel's performance is judged by "the totality of the representation." *Id.*

In order for an appellate court to find that counsel was ineffective, counsel's deficiency must be affirmatively demonstrated in the trial record. *Lopez*, 343 S.W.3d at 142. In this case, appellant did not present his claim of ineffective assistance of counsel through a motion for new trial or any procedure providing for supplementing the record in the trial court. "When such direct evidence is not available, we will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined." *Id.* at 143.

## Discussion

Appellant argues that his trial counsel was constitutionally ineffective for four reasons: (1) failing to cross-examine crucial witnesses, (2) allowing the State to lead

4

witnesses without objection, (3) making a weak closing argument, and (4) performing poorly during the punishment phase of the trial. We will review each allegation in turn.

Failure to cross-examine crucial witnesses

Appellant asserts that his trial counsel "did not ask a single question" of either of the two detectives who testified in the case. The first, Detective Loup, testified generally about being a child abuse investigator and explained how forensic interviews work. He stated that he did not attend the forensic interviews of Tasha and Mia. He did not testify as to any facts of the case, except to agree that at the conclusion of the investigation, he presented the cases to the district attorney's office. The second, Detective Acklin, testified that in 2010, she conducted a forensic interview of another child, "Samantha," who disclosed that she was sexually abused by appellant when she was thirteen years old.

Appellant's trial counsel did not cross-examine Loup or Acklin, and the record is silent as to his reasoning. We note that Loup's testimony was somewhat general in nature and did not touch on the facts of this case. We also observe that the subject of Acklin's testimony was the extraneous offense involving Samantha, and Samantha testified immediately after Acklin. Appellant's trial counsel cross-examined Samantha and highlighted differences in what Samantha said at trial and what Acklin testified Samantha told her in 2010. In the absence of anything in the record regarding counsel's decision not to cross-examine these two witnesses, we assume it was due to some strategic motivation. *Mata v. State*, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007).

5

Failure to object to State's leading questions

Next, appellant maintains that his trial counsel was ineffective for allowing the State to lead Acklin "through a series of damning questions about an extraneous offense" involving Samantha. We disagree with appellant's characterization of the State's direct examination of Acklin. Most of Acklin's testimony about the extraneous offense came in response to non-leading questions such as: "Did she talk about what [appellant] had done – what had happened with [appellant]?", "What did she tell you?", and "What did she say?" We further note that Samantha, the victim of the extraneous offense, testified immediately after Acklin, so evidence about the extraneous offense came in anyway. While this testimony may have been damning, the manner in which it was elicited was not improper.

Appellant identifies one leading question ("[T]hat's primarily because this sort of thing happens behind closed doors with really just the perpetrator and the victim present, right?") as an example of the alleged improper questioning of Acklin. The record is silent as to why defense counsel did not object to this, or any other, question. When the record is silent concerning why defense counsel did not object to leading questions from the State, the appellant fails to rebut the presumption that this conduct constitutes reasonable trial strategy. *See Young v. State*, 10 S.W.3d 705, 713 (Tex. App.—Texarkana 1999, pet. ref'd). We conclude that appellant has not met his burden to establish that his trial counsel rendered ineffective assistance by failing to object to the State's questioning of Acklin.

<u>Closing argument</u>

In his third critique, appellant argues that trial counsel made a weak closing argument. Appellant highlights trial counsel's final statement, "I submit to you that there's some questions in there and some of them raised some reasonable doubt," branding it as the "weakest closing argument concluding sentence."

The record reflects that trial counsel's closing argument emphasized to the jury that the burden was on the State to prove its case, pointed out discrepancies in the testimony that Tasha, Mia, and Samantha gave in court compared to what they said at their forensic interviews, and reminded the jury of the instruction regarding the extraneous offense evidence.

Deference to trial counsel's decisions in the context of closing argument is particularly important given the broad range of legitimate defense strategy at that stage. *Yarborough v. Gentry*, 540 U.S. 1, 5-6, 124 S. Ct. 1, 157 L. Ed. 2d 1 (2003). We conclude that a reasonable trial strategy could justify trial counsel's closing argument; therefore, appellant has not overcome the presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *See Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

<u>Punishment phase</u>

Appellant next contends that his trial counsel was ineffective because he did not ask questions of two of the State's witnesses, did not call witnesses himself, and failed to point to any "redeeming incident" or "remotely positive quality" of the appellant during the punishment phase of trial.

7

The record does not divulge trial counsel's reasons for forgoing cross-examination of these two witnesses.  Appellant has presented no argument to rebut the presumption that the decision not to cross-examine them was sound trial strategy.  As for trial counsel's failure to call witnesses on behalf of appellant, there must be a showing that potential defense witnesses were available and that their testimony would have benefited appellant in order for the failure to call them to constitute ineffective assistance.  *See Rodriguez v. State*, 74 S.W.3d 563, 566 (Tex. App.—Amarillo 2002, pet. ref'd) (citing *Wilkerson v. State*, 726 S.W.2d 542, 550-51 (Tex. Crim. App. 1986)).  No such showing has been made here.  The record does not show what, if any, mitigating evidence was available. We will not find trial counsel ineffective under such circumstances.

## Conclusion

Having overruled appellant's sole issue on appeal, we affirm the judgment of the trial court.


Judy C. Parker
Justice


Do not publish.